IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| UNITED STATES | : | |
|---|---|---|
| | : | |
| v. | : | Case No. RDB-16-0371 |
| | : | |
| WILLARD ACKER, | : | |
| | : | |
| Defendant | : | |

### MOTION TO POSTPONE POLYGRAPH EXAMINATION DUE TO PENDING SUPERVISED RELEASE VIOLATION

Willard Acker, the Defendant, by and through Andrew R. Szekely, Assistant Federal Public Defender, hereby moves to postpone his February 15, 2023, polygraph examination until after his March 20, 2023, violation of supervised release violation hearing. The examination should be postponed because Mr. Acker's probation officer has ordered him to appear and make statements during the pendency of his supervised release violation case.

On behalf of the government, Assistant United States Attorney Colleen McGuinn defers to the Court. On behalf of the United States Probation Office, United States Probation Officer Erin Gardner opposes this motion. In support of the postponement request Mr. Ackers states as follows.

On January 5, 2023, United States Probation Officer Erin Gardner filed a Petition on Supervised Release alleging that: 1. Mr. Acker had contact with law enforcement and failed to report it within 72 hours; 2. Mr. Acker failed to vacate his sister's house when told he had to move out; 3. Mr. Acker missed a session of sex offender treatment; and 4. Mr. Acker contacted or attempted to contact S.G. *See* Petition on Supervised Release, ECF No. 40.

On January 12, 2023, Mr. Acker appeared before Magistrate Judge Brendan A. Hurson for his initial appearance on the petition. Pursuant to Fed.R.Crim.P. 5(d)(1)(E), Judge Hurson advised Mr. Acker that he had the right to refuse to make statements and that if he chose to make

1

a statement he could have counsel present. The Court set the hearing on the alleged violations for March 20, 2023.

Mr. Acker has been ordered to appear for a polygraph examination on February 15, 2023. This places Mr. Acker in an impossible position. On the one hand, his supervised release conditions require him to appear and truthfully answer questions posed by the polygrapher. On the other hand, he has an inviolable right against making a statement or being questioned by government agents once a prosecution against him has commenced. This Hobson's choice could easily be avoided by postponing Mr. Acker's polygraph examination until after the March 20 hearing. The United States Probation Office, however, takes the position that Mr. Acker must appear for the examination.

Ms. Gardner has stated that any information related to admissions is to be used only for "treatment" purposes. But, supervision is blend of treatment-oriented rehabilitation and law enforcement. Ms. Gardner, though an agent of the Court, has instituted a prosecution against Mr. Acker. Were he found in violation, Ms. Gardner, on her own or through the prosecution, will recommend and advocate for a particular sentence.

If Mr. Acker made any incriminating statements or falsehoods during his polygraph it would be impossible to unring that bell. Even if the probation officer did not share the information with the Court, it would inevitably color any sentencing recommendation she may make. Indeed, it would be unreasonable to ask anyone to cordon off potentially relevant information in that situation. Beyond the practical problems with Mr. Acker taking the polygraph as scheduled, Ms. Gardner's order also violates Mr. Acker's Fifth Amendment Rights.

Mr. Acker has a privilege against making incriminating statements in the context of his supervision. The Supreme Court defined the contours of what statements a probation officer may compel a supervisee to make. For example, "[a] state may require a probationer to appear and

discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing [Fifth Amendment] privilege." *Minnesota v. Murphy*, 465 U.S. 420, 436 (1984). But, "result may be different if the questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution." *Id.* If that is the situation then, "There is thus a substantial basis in our cases for concluding that if the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." *Id. See also Mace v. Amestoy*, 765 F. Supp. 847, 850-51 (D. Vt. 1991) (holding that probation revocation for failure to complete sex offender program by making full disclosure regarding crimes other than those for which he had been convicted violated probationer's Fifth Amendment right against self-incrimination and that probationer could not be forced to incriminate himself without grant of immunity).

In *Murphy*, Murphy was seeking to exclude statements he made to his probation officer that were later used in prosecuting a new offense. The statements were admitted because he was found to have not been in the "classic penalty situation" at the time he made his statements. *Id.* at 440. As a result, he should have asserted his Fifth Amendment rights at the time of the questioning. *Id.*

Here, Mr. Acker is both in the "classic penalty situation" and timely asserting his rights. If Mr. Acker stands on his rights while pending a violation and does not appear for the polygraph, it strains credulity to think that the United States Probation Office would not file an amended petition alleging a new violation for not appearing for the polygraph. This is the "classic penalty situation" that leaves Mr. Acker in bind – comply with probation by making a compelled

statement or face revocation for asserting the rights a judge of this Court advised him of just weeks ago.

Accordingly, the Court should enter an order directing the United States Probation Office to postpone Mr. Acker's polygraph examination until after the conclusion of his violation of supervised release proceeding.

Respectfully submitted,

James Wyda
Federal Public Defender
 for the District of Maryland

\_\_\_/s/_____
Andrew R. Szekely (#16407)
Assistant Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
Phone: (410) 962-3962
Fax: (410) 962-3976
Email: andrew_szekely@fd.org